CHASEZ, Judge.
This appeal stems from a unanimous jury verdict of $10,000.00 plus interest from date of judicial demand and costs in favor of plaintiff, Paul Stoltz, and against defendants, The Fidelity and Casualty Company of New York and Dixie Highway Express, Inc., for injuries he received as a result of a collision in which his automobile was struck in the rear by the defendant’s truck..
In his original petition plaintiff erroneously named the Continental Insurance Company as defendant. In answering, the defendant corrected the name to read The Fidelity and Casualty Company of New York.
Defendants make no issue here of negligence and it is apparent that the sole basis for appealing is that the award granted was excessive.
The facts are that on August 10, 1966, plaintiff was stopped at an intersection in New Orleans for the purpose of making a left turn when his vehicle was struck in the rear by a truck owned by Dixie Highway Express, Inc., operated by its then employee, Samuel Richards. After the accident the plaintiff drove his car home and entered his house in his wife’s words “visibly shaken”. He did not see a doctor the day of the accident and reported for work the next day. However, the pain in his neck became so severe that it necessitated his being relieved from duty while on his bus route. Plaintiff is employed as a bus driver for the New Orleans Public Service, Ipc., and was so employed at the time of the accident.
That same day, August 11, 1966, he visited his family physician, Dr. Knolle, who testified that on the first visit plaintiff complained of neck pains on moving his head to the side and back. X-rays made by Dr. Knolle failed to show any fracture. Mr. Stoltz was given medication to relieve pain and to relieve muscle spasm. Plaintiff was seen again by Dr. Knolle on August 23, 1966, and reported that he was still in pain when he moved his head to the right. The doctor prescribed more pain reliever and a different muscle relaxant. A third visit to Dr. Knolle occurred on September 26, 1966. On this date the pain was more severe than it had been, according to Dr. Knolle. He stated that this was not unusual as pain from this type injury would vary in stages of exacerbation and remission, that is, they get worse and then better and then worse again. The doctor again prescribed a pain reliever and a muscle relaxant. Shortly after this visit Dr. Knolle left town for an extended vacation.
Plaintiff had retained counsel and was advised by him to see Dr. David Aiken. Dr. Aiken was an admitted expert in *445 general surgery and testified as to his examination and treatment of the plaintiff. He first examined Mr. Stoltz on October 6, 1966. He related the same general history as did Dr. Knolle; that “some days it (pain) was bad and some days worse, particularly bothersome after driving a bus which is his occupation.” It should be stated here that Mr. Stoltz missed seventeen days of work and he testified that he returned to work as soon as possible because of financial responsibilities but that he still' súfféfed" with his neck. Dr. Aiken testified that plaintiff still suffered from a two plus spasm on a scale of one to four plus. He defined spasm as a tightness in the muscle that is usually worse upon arising in the morning after sleeping and in the mid-day. Dr., Aiken stated that on examination, “the structures on the left side of the neck presented no abnormality. In the-mid-line, in the back of the neck, there was tenderness of the second, third, fourth and fifth vertebra, which are called the spinous processes.” On tilting the head there was a limitation of movement. Movement was permitted up to 20 degrees to the left and to 35 degrees to the right. There was also about ten per cent limitation in rotation to the left and to the right and in flexion and extension. Dr. Aiken prescribed a Thomas Collar for Mr. Stoltz, which he wore at home but not at work because he would not have been allowed to drive the bus if he wore the collar on the job. Dr. Aiken further testified that he referred plaintiff to a Dr. Winokur, a physiotherapist.
Mr. Stoltz reported to the physiotherapist the following day, October 7, 1966, and went every day for two weeks with the exception of Saturday and Sunday because Dr. Winokur’s office was not open on those days. After the first two weeks he went back periodically until some time in November of 1966. Stoltz testified that when he went for therapy the treatment consisted of traction for about 30 minutes, a heat wave treatment for about 30 minutes and then a massage with a vibrator for about 15 minutes. Dr. Winokur was not called to testify and his bill was stipulated between counsel for both parties.
Dr. Aiken further testified that Mr. Stoltz was suffering from osteoarthritis of the cervical spine which1 pre-existed the accident. This diagnosis was made after studying the x-rays taken by Dr. Knolle the day after the accident. Dr. Aiken stated that the osteoarthritic condition had not worsened after six months of treatment based on x-rays taken at that time and that this lead him to believe that the pain and restriction of movement was due to the accident and not to the osteoarthritis.
This testimony is bolstered by the testimony of the plaintiff and three witnesses who stated that Mr. Stoltz never suffered any pain in his neck prior to the accident.
Dr. Aiken testified that osteoarthritis is present in some stage in nearly every person over forty years old. Mr. Stoltz was fifty-six at the time of the accident. Dr. Aiken related that the condition of osteoarthritis is not painful to the' vast majority of people. He further testified that when you superimpose upon a preexisting osteoarthritic condition which is asymptomatic, a cervical sprain such as this man suffered, he may not recover as soon or at all as opposed to a person who does not have osteoarthritis; that this combination produces longlasting and recurring pain in the neck.
Dr. Aiken examined plaintiff on the Saturday before the case came for trial on November 18, 1968. At that point, two years after the accident, the condition was found still to exist.
After reviewing the plaintiff’s history and all of his findings, Dr. Aiken made the following prognosis that was in his opinion within a reasonable medical certainty:
“Q. And considering the man’s history and all of your findings, you have a *446 prognosis for this pain on the right side of the neck?
“A. I would feel that the situation by now is static and may not be expected to change, except it is possible that if he stopped bus driving it might improve further, as undoubtedly the use of these muscles in driving probably continues to aggravate the situation.
“Q. In other words, these muscles on the right side of the neck have remained chronically injured, and any time he used these to any extent give him trouble.
“A. Yes.
“Q. And in periods when he’d use these, like to paint the house and wax the car, they would then give him a significant amount of trouble.
“A. According to the history that I obtained from him, it does seem to be the situation.
“Q. And this is all existing in your opinion within a reasonable medical certainty.
“A. Yes.”
In other words, Dr. Aiken was of the opinion that the accident left Mr. Stoltz with permanent residual pain and disability of movement in his neck.
Dr. Hyman Soboloff, who was qualified as an expert in Orthopedic Surgery, testified for the defense. He was not the treating physician and examined plaintiff but once and then on behalf of the defense some seven months after the accident occurred. After examining the x-rays he testified that the osteoarthritis pre-existed the accident. He stated that this condition could cause aching and pain. However, the testimony was unrefuted that plaintiff in fact suffered no pain prior to the accident. Dr. Soboloff stated that the pain and limitation of movement could be consistent with the stage of development of these osteoarthritic changes without the intervention of any trauma. On cross-examination Dr. Soboloff admitted that the presence of osteoarthritis does not necessarily mean that there is pain. He also, admitted that absent any pain prior to the accident that the pain would probably be related to the accident. The following testimony was elicited from Dr. Soboloff on cross-examination at page 133 of the trial transcript:
“Q. The bone structure itself has no nerves in it?
“A. That’s correct.
“Q. The osteoarthritis itself, unless affecting some other structure in the neck, does not cause pain.
“A. That’s correct.
“Q. And almost everyone over forty years of age has osteoarthritis in the neck?
“A. To some extent, yes, sir. Usually.
“Q. And this arthritis, this osteoarthritis in most people doesn’t cause pain.
“A. That is correct. Yes, sir.
“Q. And sometimes you can take an x-ray of a person who has severe osteoarthritis of the neck and he’s not having any pain or any complaints.
“A. That is correct. Yes, sir.
“Q. So the fact that this man had osteoarthritis pre-existing the accident admittedly from a medical standpoint does not necessarily mean that he was having pain in his neck before the accident ?
“A. That is correct.
“Q. One of the reasons why this osteoarthritis as it builds up, why it doesn’t cause pain is because it’s a gradual process.
“A. Yes, sir.”
*447 With respect as to whether the pain was caused by the accident rather than the osteoarthritis:
“Q. Alright. Within a reasonable medical certainty, Doctor, consider, one, the man history and findings. 'Two, that he did suffer an injury. Three, that at the time you examined him he had minimal residual pain and restriction of motion on the right and that he had some minimal hemorrhaging and scar tissue. Consider also that he continued to have minimal restriction and pain on the right side of his neck and in no other areas of his neck to the present time. Would it not be a fact, doctor, that this pain would be related to the accident?
“A. If these assumptions are all correct, yes sir.
"Q. And that it would be due to an injury to the soft tissues which in essence aggravated the pre-existence or activated the pre-existence of the osteoarthritis into a symptomatic state.
“A. Yes, sir.
“Q. It’s a combination of causes. You have a neck with osteoarthritis and it’s not as easy to get over an injury of this type of a neck like that.
“A. Yes, sir.
“Q. And you superimpose the strain and the two of them together cause a continuing pain in the neck.
“A. Yes, sir.
“Q. And if this man had, assuming all of these things in this hypothetical again, had pain in the neck at the present time it would be likely that this pain would not likely go away.
“A. That’s a possibility. Yes, sir.
“Q. And this pain would be related to the accident, is that correct, Doctor?
“A. Yes, sir.”
The net effect of both Doctors’ testimony is that within a reasonable medical certainty the pain from which Mr. Stoltz suffers was caused by the accident and his condition is worsened by the pre-existing osteoarthritis. Doctor Aiken testified that he thought plaintiff’s condition had become static and would not improve. Dr. Sobo-loff admitted that this was a possibility.
Based on all these factors the jury awarded plaintiff $10,000.00. Our question is whether this award is so excessive as to amount to an abuse of the jury’s great discretion.
Included in this award was $1,166.75 in special damages which was either stipulated or established by testimony or by documentary evidence. Therefore the total award for pain and suffering was $10,000.00, less $1,166.75, or $8,833.25. Under the rule announced in Lomenick v. Schoeffler, 250 Ta. 959, 200 So.2d 127 (1967), the type of injury has little significance in determining the amount of the award. The controlling factors are the circumstances surrounding each case and each case must be evaluated in that light only. Reference to other cases in the jurisprudence may be made only to show that the fact finder has not abused its great discretion.
The facts and circumstances of the case at bar are not out of line with our jurisprudence. In cases involving permanent residual pain or disability, such as in the present case, awards approaching $10,000.-00 have been made. Considering the fact that Mr. Stoltz’s pain is a residual of the accident, will most likely be permanent, especially in light of his occupation as a bus driver which requires an inordinate amount of head turning, we cannot say that the jury abused the great discretion granted to it.
For the foregoing reasons the judgment of $10,000.00 awarded to the plaintiff by the jury is affirmed. Costs of this appeal are assessed to defendant-appellant.
Affirmed.